IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROBERT JACKSON,                             *

                 Plaintiff,

         v.                              *                 CIVIL ACTION NO. RDB-15-648

BOBBY SHEARIN,                         *
DAVID SIPES,

                                        *

                Defendants.

                                      ***

## MEMORANDUM OPINION

Pending is a Motion to Dismiss, or in the Alternative Motion for Summary Judgment filed by Defendants Bobby Shearin and David Sipes. ECF No. 13.  Plaintiff has responded.  ECF No. 17.   Upon review of the papers and exhibits filed, the Court finds an oral hearing in this matter unnecessary.  *See* Local Rule 105.6 (D. Md. 2014).  For the reasons stated below, Defendants' dispositive motion will be granted.

## Background

This lawsuit, which centers on a prison disciplinary proceedings, presents a lengthy procedural history.  Plaintiff Robert Jackson, an inmate held at the Western Correctional Institution ("WCI"),  alleges that during an institutional disciplinary hearing held on November 24, 2009, while he was confined at the North Branch Correctional Institution ("NBCI"),  the institution refused to produce requested video footage.  Plaintiff  alleged Hearing Officer Sipes stated that Sipes did not view the footage because it was not made available to him.  ECF 1, p. 4. Subsequently, at an administrative hearing conducted on September 5, 2011, the guilty finding was vacated due to the failure to produce the video.  A new disciplinary hearing was scheduled. However, the video footage was not available at the subsequent hearing and the hearing officer refused to draw a negative inference form the lack of availability of the video. *Id*. Plaintiff seeks to have the guilty finding removed from his file and compensatory damages. *Id*.

Correctional Officer Hilliard, in a Notice of Inmate Rule Violation, averred that on November 21, 2009, he was assigned to Housing Unit 3,  A Tier at NBCI.  ECF 13-2, p. 2. Hilliard observed Plaintiff, who after returning from his food service job, exited the shower and walked around the tier, stopping a different cells for a period of time. *Id*.; ECF 13-3, p. 17, 30. In response to Hilliard's inquiry as to what Plaintiff was doing, Plaintiff responded that he was the "tier rep" and was passing around newspapers. *Id*. Hilliard noted that neither Plaintiff nor any of the cells where Plaintiff stopped possessed  a newspaper.  Hilliard requested Plaintiff lock in his cell. Plaintiff ignored Hilliard's order and continued walking the tier and stopping at cells. Hilliard then gave Plaintiff a direct order to lock in. Plaintiff stomped down the tier, waving his hands stating,  "You bunch of dick eating sons of bitches can hand out your own toilet paper on Monday." *Id*. Plaintiff pointed at Hilliard in the control center and said, "You're lucky I don't beat you ass right in from of them."  Plaintiff then locked in. *Id*.

The following day Hilliard issued Plaintiff a Notice of Inmate Rule Violation charging Plaintiff with violating Rule 104-use of intimidating, coercive, or threatening language. ECF 13-2, p. 2; ECF 13-3, pp. 17, 30.  Plaintiff requested the "videotape from tier" be made available at his disciplinary hearing. *Id*.

Plaintiff's disciplinary hearing was conducted on November 24, 2009, by Hearing Officer Sipes. Sipes considered the information contained in the Notice of Inmate Rule Violation, as well as testimony from Plaintiff (who denied the incident occurred), Hilliard, and  inmate Duncan. ECF 13-2, pp. 4-5, ECF 13-3, pp. 18, 30-31.  Plaintiff requested Sipes review the video surveillance of the tier, claiming it would be exculpatory. ECF 13-2, p. 5; ECF 13-3, p. 18, 31. The video, however, was not made available. *Id*. Sipes found Plaintiff  in violation of Rule 104. ECF 13-2, pp. 6-7; ECF 13-3, pp. 18, 31. Sipes recommended Plaintiff receive 150 days of

segregation confinement.  No loss of god conduct time was imposed. The Warden affirmed Sipes'

decision. ECF 13-2, pp. 10-11; ECF 13-3, p. 31.

Plaintiff field a grievance with the Inmate Grievance Office ("IGO)" appealing the

outcome of his disciplinary hearing. ECF 13-3, pp. 1-12, 18, 31. A hearing was held before an

Administrative Law Judge ("ALJ") on October 5, 2011. *Id*. The ALJ recommended that the

November 24, 2009 decision be vacated and the matter remanded for a new hearing before the

same hearing officer.  The ALJ directed the new hearing should  include a determination as to

whether the video surveillance tape should be produced and viewed.  The ALJ also ordered that ;

if Sipes chose not to view the tape he should explain why and if Sipes viewed the tape, he must

address the evidence.  If the video tape was unavailable Sipes was directed to determine whether

an adverse inference should be drawn from its unavailability and explain his reasons.  ECF 13-3,

pp. 1-12, 18-19, 31-32.

Plaintiff  appeared before Sipes for the rehearing on March 5, 2012. ECF 13-2, pp. 17-22,

ECF 13-3, pp. 19, 32. Prior to the hearing, Plaintiff again requested the video be made available.

ECF 13-2, pp. 17-18; ECF 13-3, p. 32.  The video was not available, and Plaintiff moved to

dismiss the infraction, arguing that NBCI was negligent in failing to retain the video. ECF 13-3,

p. 36.  Sergeant Whitlock testified that the practice of the institution at the time of the initial

hearing was not to use video surveillance at the disciplinary proceedings because it would

compromise institutional security. He further testified that it was not the practice to save video

surveillance for possible use at disciplinary hearing.  ECF 13-3, p. 35. Whitlock also noted that

staffing and equipment shortages also supported the practice of not maintaining or providing the

video. Whitlock testified that toward the end of 2011, the institutional practice changed and video

surveillance was thereafter made available for view by the hearing officer *in camera* when it is

requested.  Whitlock could not specify when the requested video surveillance was recorded over.
*Id*.

Sipes found that the video was not available and at the time of the first hearing it was not

the institution's policy to provide video due to staffing and security concerns.  He further found

that in 2009 it was not the policy of the institution to save the video, and therefor the video was

preserved for a short time on a hard drive of a computer and then recorded over. No hard copy of

the video footage was preserved and  the tape could not be produced.  ECF 13-2, p. 18; ECF 13-3,

19, 32. Sipes found that NBCI did not purposefully  fail to preserve the video in an effort to cover

up facts regarding the violation and did not draw an adverse inference from the lack of video.

Sipes considered the following evidence in assessing Plaintiff's guilt: the information contained

in the notice of violation;  testimony from Plaintiff, Hilliard,  and inmate Duncan. ECF 13-2, p.

21, ECF 13-3, pp. 18-19, 32-33. Plaintiff again denied the incident occurred. ECF 13-3, pp. 18,

33. Sipes found Plaintiff violated Rule 104 and again recommended 150 days of segregation

confinement with no loss of good conduct credits. ECF 13-2, pp. 20-21; ECF 13-3, pp. 20, 33.

The Warden affirmed Sipes'  recommendation. ECF 13-2, pp. 26-27; ECF 13-3, pp. 20, 33.

Plaintiff filed a grievance with the IGO. ECF 13-3, p. 14.  The grievance wad denied and

dismissed, without a hearing, on November 2, 2012. *Id*., pp. 2, 24.  Plaintiff appealed and on

November 3, 2013, the Circuit Court for Allegany County reversed and remanded the matter for

further hearings. *Id*., p. 2.

On January 7, 2014, a hearing was held before ALJ Nichols. *Id*., pp. 2, 27.  On February

11, 2014, Nichols denied  and dismissed the grievance as without merit finding no evidence to

suggest that the video was unavailable as a result of  deliberately not being retained or

intentionally destroyed by NBCI. *Id*., pp, 2, 30, 37.  Nichols found as a matter of law that the

4

failure of NBCI to produce video surveillance of the incident occurring on November 21, 2009, at

the remanded disciplinary proceeding held on March 5, 2012 did not violate Plaintiff's due

process rights. *Id.,*  p. 38.  The ALJ further found as a matter of law that Sipes did not abuse his

discretion in declining to draw an adverse inference regarding the unavailability of the tape. *Id.,* p.

39. The Circuit Court of Allegany County affirmed the final administrative decision on August

28, 2014. *Id.,* p. 3.

<h3 style="text-align:center">Standard of Review</h3>

A.      Motion to Dismiss

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the

sufficiency of the  plaintiff's complaint.  *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243

(4th Cir. 1999).  The dismissal for failure to state a claim upon which relief may be granted does

not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in

support of his claim which would entitle him to relief.  *See Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 561 (2007).  Once a claim has been stated adequately, it may be supported by showing

any set of facts consistent with the allegations in the complaint.  *Id.* at 563.  The court need not,

however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs,* 882 F.2d

870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,*

478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual

events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

B.      Motion for Summary Judgment

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that
> there is no genuine dispute as to any material fact and the movant is
> entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).   The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002).  The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial."  *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.  Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or

6

the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact.  No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

**Analysis**

A.    Statute of Limitations

Section 1983 provides a federal cause of action, but in several respects relevant here federal law looks to the law of the State in which the cause of action arose. This is so for the length of the statute of limitations: It is that which the State provides for personal-injury torts. *Wallace v. Kato,* 549 U.S. 384, 387 (2007), citing *Owens v. Okure,* 488 U.S. 235, 249-250, (1989); *Wilson v. Garcia,* 471 U.S. 261, 279-280 (1985).  In Maryland the applicable statute of limitations is three years from the date of the occurrence. *See* Md. Cts & Jud. Proc. Code Ann. § 5-101.

Although the state statute of limitations applies, the time of accrual of the action is a federal question. *Cox v. Stanton*, 529 F.2d at  50.  The running of the statute of limitations begins when Plaintiff knows or has reason to know of his injury. *Id*.  Here, Plaintiff alleges that Shearin was the Warden of NBCI in November of 2009 and was the party who refused to provide the video for the hearing.  ECF 1.  Because Plaintiff failed to file the instant complaint until February

24, 2015, it is clear that the statute of limitations now bars consideration of his claim as to Shearin.

Sipes also argues that Plaintiff's claim that he improperly failed to draw a negative inference from the failure to produce the video during the re-hearing held on March 5, 2012 is also time barred because the Complaint was not filed until March 9, 2015.  ECF No. 13.  While Plaintiff's complaint was docketed on  March 9, 2015, it is signed and dated February 24, 2015. The signature date controls.  *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (finding pro se prisoner's notice of appeal was filed at moment of delivery to prison authorities for mailing to district court).  Plaintiff's compliant against Sipes is timely.

B.      Supervisory Liability

The law in the Fourth Circuit is well established that the doctrine of *respondeat superior* does not apply in § 1983 claims.  *See Love-Lane v. Martin*, 355 F. 3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983).  Liability of supervisory officials "is not based on ordinary principles of *respondeat superior*, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'"  *Baynard v. Malone*, 268 F. 3d 228, 235 (4th Cir. 2001) citing *Slakan v. Porter*, 737 F. 2d 368, 372 (4th Cir. 1984).  Supervisory liability under § 1983 must be supported with evidence that:  (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the

plaintiff.  *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994).

Plaintiff's claim against former Warden Shearin, lacking in personal involvement, is insufficient.  Plaintiff has pointed to no action or inaction on the part of Shearin that resulted in a constitutional injury, and accordingly, his claims against Shearin shall be dismissed.   This determination, however, does not end the Court's inquiry.

C.        Due Process in Disciplinary Proceedings.

In prison disciplinary proceedings which bring the possible loss of good conduct credits, a prisoner is entitled to certain due process protections.  *See Wolff v. McDonnell*, 418 U.S. 539, 564 (1974).  These include advance written notice of the charges against him, a hearing, the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision.  *Wolff*, 418 U. S. at 564-571.   Substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Correctional Institute v. Hill*, 472 U.S. 445, 455 (1985).

Plaintiff received all the process he was due.  He was given timely advance written notice of the infraction and permitted to attend the disciplinary hearing. The hearing officer's determination of guilt was based upon some evidence, i.e. review of Plaintiff's testimony, the officer's testimony, an inmate witness's testimony, and the written record.

 Plaintiff's contention that he was denied the opportunity to present evidence does not state a due process violation where, as here, the hearing officer and later the ALJ both determined that the video tape sought to be produced was unavailable.  *Piggie v. Cotton*, 344 F. 3d 674, 677 (7th Cir. 2003) (no right to present evidence which would be irrelevant, repetitive, or unnecessary.)   Although the tape was unavailable, the Hearing Officer and ALJ both found the available evidence sufficient to support Plaintiff's guilt.

Moreover, to the extent Plaintiff alleges he was denied due process during his initial

adjustment hearing due to the failure to review the tape, his claim is unavailing. A number of courts have examined this issue and concluded that "there is no denial of due process if the error the inmate complains of is corrected in the administrative appeal process." *Morisssette v. Peters*, 45 F.3d 1119, 1122 (7th Cir. 1995) (citing *Harper v. Lee*, 938 F.2d 104, 105 (8th Cir. 1991)); *Young v. Hoffman*, 970 F. 2d 1154, 1156 (2d Cir. 1992) ("administrative reversal constituted part of the due process protection [inmate] received, and it cured any procedural defect that may have occurred." Here, the case was remanded and specific findings regarding the availability of the video tape were entered. Any due process violation that took place at Plaintiff's first adjustment hearing was cured by the reconsideration of the availability of the video tape and any adverse inferences to be drawn therefrom.[1]

Moreover, it is well established that the revocation of good conduct credits may not take place without first providing the inmate with the protections of due process. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). In the instant case, however, no good conduct credits were forfeited. Thus, Plaintiff received all the process he was due.

### Conclusion

The dispositive motion filed on behalf of Defendants will be granted.[2] A separate Order follows.

Date: January 28, 2016 _____/s/_____
Richard D. Bennett
United States District Judge

---

[1] Although *Juncker* dealt with personal injury rather than property loss, its analysis and conclusion that sufficient due process is afforded through post deprivation remedies available in the Maryland courts also applies to cases of lost or stolen property, given *Juncker's* reliance on *Parratt* in dismissing plaintiff's due process claim.

[2] Having found no constitutional violation, the Court need not address Defendants' claim that they are entitled to qualified immunity.